## ARMSTEAD v. THOMAS.

1. When the holder of a note enters into an agreement with the principal debtor, that he will not sue a surety until after a certain time, if the principal will engage to pay all costs and lawyer's fees, this will not discharge the surety.

2. When the defence interposed will not warrant a charge in favor of a defendant, a judgment will not be reversed, although the cause is submitted to the jury on a charge which, under other circumstances, might be erroneous.

3. When a witness for the defence states that a note was left with an individual, as a friend, to receive payment, it is not erroneous to permit the plaintiff to prove by that person, that it was left with him as an attorney, and his instructions in relation to it.

Error to the County Court of Lauderdale.

ASSUMPSIT by Thomas against Armstead, as one of the makers of a joint and several promissory note, dated 1st May, 1839, payable 17 months after date, signed by one Lanier, as principal, and by Armstead and one McKenzie, as sureties, negotiable and payable at the Mississippi Union Bank, at Jackson.

At the trial, on the general issue and other pleas, it was in evidence, that after the maturity of the note, the plaintiff, Thomas, to whom, or order, the note is payable, had indors-

ed it to one Davis, and that Davis, when holding the note, called on Lanier, the principal, for payment, and received from him a saddle horse, at $250, and a watch at $150, in part payment ; also, a receipt given to Lanier, by certain attorneys for a note on a third person, in their hands for collection, which, if paid was to be credited on the note. These facts were deposed to by Lanier, who also deposed, that in consideration of these payments, Davis agreed to wait until the 1st of January, 1842, for the remainder of the debt, provided Lanier would pay all the costs of suit, lawyers fees, &c. in case Davis should have to sue Armstead, at the expiration of said indulgence. He further deposed, that when Davis first spoke to him about the claim, he said he would take any property Lanier would give him in liquidation of the debt, as he had taken it to secure himself as indorser for Thomas, and that his information was, that Armstead was insolvent, or in such a condition as made it doubtful whether he could collect the debt from him. Lanier informed Davis that Armstead was good for the debt, and Davis then said that unless Lanier would pledge himself to pay all costs of suit, and lawyers fees, he would send the debt immediately to Alabama. Lanier was anxious Armstead should not be sued, and agreed to pay all costs and lawyers fees. Armstead at that time resided in Alabama, and was ignorant of the agreement between Lanier and Davis. If Lanier was able, between the period when the conversation was had, in July, 1841, and 1st January, 1842, to obtain a negro boy, Davis was to take this at a valuation, and the note was left in the hands of a Mr. Patillo, to receive the boy if Lanier should tender him. At the time of the agreement, Lanier was insolvent.

The plaintiff offered the deposition of Patillo, stating, among other matters, that Davis left the note in suit with him, as a lawyer, with instructions to receive from Lanier a negro boy, in payment, if tendered by Lanier, at such price as deponent should consider reasonable ; and further, that if Armstead should return from Alabama to Mississippi, so that process could there be served on him, he was to institute suit immediately, against him and Lanier. Davis instructed the deponent, not to sue Lanier alone, as he did not believe the mo-

ney could be made from him. The defendant objected to the part of the deposition recited, but the court permitted all the deposition to be read to the jury. Lanier had previously stated, in his deposition, that the note was not left with. Patillo, as a lawyer, but as a mutual friend, and that Patillo had said to him, Davis had instructed him not to take any other steps with the note until January, 1842, unless the negro boy was offered.

On this proof, the defendant asked the court to instruct the jury, that should they believe the agreement spoken of by Lanier was made with Davis without the assent of the deponent, then he was, as surety for Lanier, discharged from liability on the note. This was refused, but the court charged they must first be satisfied the agreement was of prejudice to the defendant, before he was discharged from liability on the note.

The defendant excepted to the admission of the part of the deposition objected to, and to the refusal to charge as requested, as well as the charge as given ; and now assigns these matters as error.

S. PARSONS, for the plaintiff in error, cited 3 Stew. 485 ; 4 Ala. Rep. 48 ; M. & P. Dig. 124 ; 5 Ala. Rep. 388 ; 3 Stew. 14 ; 10 Johns. 586 ; Theobald, 76, 152 ; 3 Wend. 29 ; 6 Porter, 166, 236 ; 8 Porter, 108 ; 8 John. 53 ; 13 Wend. 375.

E. W. PECK, contra, insisted—

1. That here was no valid contract whatever, in any sense of the word, to delay proceedings against the principal ; the agreement is made at the instance of the principal not to sue the surety. Neither the stay of execution, nor partial payment will discharge a surety. [Fletcher v. Gamble, 3 Ala. Rep. 339 ; Leverick v. Bates, 6 Ib. 480.]

2. If the contract is one for the benefit of the surety, and does not contemplate delay as to the principal, there is no pretence to say that the admission of the evidence of Patillo is an error from which injury has resulted, and therefore the judgment ought not to be reversed ; but the directions given

to him, were a part of the transaction, and properly admissible.

GOLDTHWAITE, J.—The general rule is, that a surety will be discharged if the creditor stipulates in a binding manner, upon a sufficient consideration, with the principal debtor, to give day of payment, without the consent of the surety. [1 Story's Eq. § 326.] It will readily be perceived, the evidence in this case does not bring it within the rule, because there is no pretence to say that any engagement was entered into to give the principal debtor further day. The agreement was that the surety should not be sued until a particular period, or rather, that if suit against him was delayed until that period, the principal debtor was to be accountable for all costs and lawyer's fees. Conceding this to be a binding agreement upon the principal debtor, it cannot be said that the surety's rights were impaired. It cannot be pretended, the surety might not have paid the debt, without losing his remedy against his principal; or that the creditor at the instance of the surety, might not be compelled to sue. It is then nothing more than a stipulation by the creditor, at the instance of the principal, that the surety shall not be proceeded against until after the lapse of a certain time. [See Wilson v. Bank of Orleans, at this term.] In our judgment such a contract, whether with or without consideration, does not avoid the contract of the surety.

2. What has been said is sufficient to show, the charge requested was properly refused, but it is further insisted, that the one actually given is erroneous. It may be so under particular circumstances, but certainly was not so in connection with the evidence before the jury. The court, as we have shown, might have instructed, that the facts in evidence were no defence, but instead of this, submit the cause to the jury upon the question whether the surety has sustained injury. This was more favorable than was allowable, but the error is against the plaintiff, instead of the defendant.

3. The objection to the portion of the deposition which was allowed to go to the jury, is not sustainable. The defendant had proved that the note was left with this witness as a friend to receive payment, and though this circumstance

was quite immaterial, yet there certainly was no error in showing what instructions were given to the party when the note was left with him.

We can perceive no error in the record. Judgment affirmed.